## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

ERIC FRANKENHAUSER                                          PETITIONER
ADC #157660

V.                              NO. 5:17-CV-00155-JTR

WENDY KELLEY, Director,
Arkansas Department of Correction                          RESPONDENT

### MEMORANDUM AND ORDER

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus
filed by Eric Frankenhauser ("Frankenhauser"), an inmate at the Arkansas
Department of Correction ("ADC"). *Doc. 1.* Before addressing Frankenhauser's
habeas claims, the Court will review the relevant underlying facts and the procedural
history of the case in state court.

### I. Background

On August 5, 2012, Frankenhauser, armed with a handgun, chased his
girlfriend, Jessica Stewart ("Ms. Stewart"), from their home.  Multiple witnesses
described hearing Ms. Stewart banging on a neighbor's door, hearing Frankenhauser
and Ms. Stewart arguing, and seeing Ms. Stewart, unarmed and on her knees with
her hands on her head, screaming, "no, no, no," just before Frankenhauser shot her
once in the back of the head. *Doc. 1 at pp. 2-3.*

Frankenhauser fled the scene in Ms. Stewart's car.  He was later arrested in Columbus, Ohio and extradited back to Fayetteville, Arkansas, to face murder charges.  After his arrest, Frankenhauser gave incriminating statements in which he acknowledged getting in a fight with his girlfriend, grabbing a gun, and shooting her. *Id. at p. 3;  Doc. 8-8* (transcript of hearing on Frankenhauser's Motion to Suppress).

Frankenhauser was charged in a felony information with one count of capital murder, in violation of Ark. Code Ann. § 5-10-101(a)(4).  This required the prosecution to prove that Frankenhauser acted "with the premeditated and deliberate purpose of causing" Ms. Stewart's death.[1]  Pat Aydelott ("Mr. Aydelott"), a public defender, was appointed to represent Frankenhauser.[2]  The State advised Frankenhauser and Mr. Aydelott that it was seeking the death penalty.

On November 27, 2012, Mr. Aydelott filed a motion to have Frankenhauser's mental state evaluated.  He requested a forensic evaluation to determine his fitness to assist in his defense and whether, at the time of the offense, a "mental disease or defect" prevented him from having the *mens rea* necessary to commit capital

---

[1] *See* Felony Information, filed August 6, 2012, in *State v. Frankenhauser*, Circuit Court of Washington County, Arkansas, Case No. CR 2012-1240-1 ("*State v. Frankenhauser*").  The Court has accessed and reviewed the publicly available docket sheet and filings from *State v. Frankenhauser*.

[2] Later, a second attorney, Scott Parks, was appointed to represent Frankenhauser.  All of Frankenhauser's habeas claims for ineffective assistance of counsel are against only Mr. Aydelott.

2

murder.[3]  On April 11, 2013, Mark Peacock, Ph.D., filed his court-ordered Forensic Report,[4] in which he found no basis for challenging either Frankenhauser's fitness to stand trial or his lack of mental capacity to commit capital murder.

On July 12, 2013, Patricia J. Walz, Ph.D., conducted a second forensic evaluation of Frankenhauser at Mr. Aydelott's request.  *Doc. 8-4.*  Dr. Walz's Forensic Report, like Dr. Peacock's, provided no support for challenging either Frankenhauser's fitness to proceed or to support a defense the he lacked the mental capacity to commit capital murder.

---

[3]  Frankenhauser's "fitness to stand trial" and his lack of the requisite *mens rea* are separate and distinct legal issues.  *See* Ark. Code Ann. § 5-2-302 (2013 Repl.) ("No person who lacks the capacity to understand a proceeding against him . . . or to assist effectively in his . . . own defense as a result of mental disease or defect shall be tried, convicted, or sentenced for the commission of the offense so long as the incapacity endures.");  Ark. Code Ann. § 5-2-312(a) (2013 Repl.) (describing the requirements of the affirmative defense of lack of capacity as a result of mental disease or defect to conform his conduct to the requirements of law or to appreciate the criminality of his conduct).

[4]  Dr. Peacock diagnosed Frankenhauser with:
      Axis I:   Major Depressive Disorder, Recurrent, In Remission
      Axis II:  Borderline Personality Disorder
*Doc. 8-5, p. 1.*
      Dr. Peacock concluded that Frankenhauser was of at least average intelligence, understood the charges against him, and was able to assist in his defense.  *Id. at p. 17-20.*  On the separate question of his capacity at the time of the alleged offense, Dr. Peacock opined that Frankenhauser "was not suffering from substantially impairing symptoms of a mental disease or mental defect on 08/05/2012, despite his claim that his recently prescribed Depakote medication caused him to experience a sense of unreality, racing thoughts, and amnesia at the time of the offense." *Id. at p. 21.*  Dr. Peacock specifically considered the impact of adding Depakote to Frankenhauser's other medications, but remained "unconvinced" that Frankenhauser "experienced any abnormal psychological phenomena on 08/05/2012." *Id.*

On May 14, 2014, Frankenhauser entered a negotiated guilty plea to first-degree murder in Washington County Circuit Court.  In exchange for his plea, the State dropped the capital murder charge, which exposed Frankenhauser to the death penalty.[5]  The first degree murder charge exposed Frankenhauser to a sentence of ten to forty years, or life.[6]  The State recommended that Frankenhauser receive a life sentence.

During the plea colloquy, Frankenhauser admitted that, on August 5, 2012, he shot and killed Ms. Stewart, without legal justification.  Washington County Circuit Judge William Storey accepted the plea and imposed a life sentence.  *Doc. 1 at p. 1; Doc. 8-3* (plea transcript).[7]

By entering an unconditional guilty plea, Frankenhauser waived the right to challenge his conviction on direct appeal.[8]

---

[5]  Ark. Code Ann. 5-10-101(c) (eff. July 27, 2011).

[6]  Ark. Code Ann. §§ 5-10-102(c); 5-4-401(a)(1).

[7]  In the Sentencing Order, dated May 15, 2014, Judge Storey noted that, while the presumptive sentence was 384 months, he found Frankenhauser's conduct "manifested extreme cruelty" toward the victim and supported the imposition of a life sentence.  *Doc. 8-2.*

[8]  *See* Ark. R. App. P. Crim. 1(a) ("Except as provided by ARCrP 24.3(b) there shall be no appeal from a plea of guilty or nolo contendere."); Ark. R. Crim. P. 24.3(b) (with the court's approval and the prosecutor's consent, "a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment" to review adverse determinations of pretrial motions: (1) to suppress seized evidence or a custodial statement; (2) to dismiss a charge as untimely; or (3) challenging the constitutionality of the criminal statute at issue).

On November 20, 2014, Frankenhauser, proceeding *pro se*, filed a Rule 37 petition in the trial court.  The parties agree that the petition was filed *after* the ninety-day time limit for seeking post-conviction relief.  *Doc. 8 at p. 1*;  *Doc. 12 at p. 6.  See* Ark. R. Cr. Pr. 37.2.  Frankenhauser also attempted to refile the same petition, without exhibits, on January 27, 2015.  Perhaps because both of those Rule 37 petitions were untimely, the trial court did not enter an order dismissing them.

On June 2, 2017, Frankenhauser's retained counsel, Mr. Craig Lambert, initiated this § 2254 habeas action.  In his Petition, Frankenhauser alleges that Mr. Aydelott provided constitutionally ineffective representation by advising him to plead guilty to first degree murder:  (1) to avoid the death penalty, even though "there were no aggravating circumstances that would have supported" the death penalty; (2)  "in the face of a highly meritorious defense of mental disease or defect";  and (3)  "in the face of a winnable motion to suppress his confession." *Doc. 1 at 7, 10, 16.*[9]

Respondent contends that Frankenhauser's habeas Petition should be dismissed because he initiated this action beyond the one-year limitations period, *and* all of his claims are procedurally defaulted.[10]    *Doc. 8.*    In his Reply,

---

[9]  None of these claims were included in Frankenhauser's *pro se* Rule 37 filings.

[10]  Because Frankenhauser's claims are   time-barred, the Court need not address Respondent's procedural default argument.

Frankenhauser admits his habeas Petition is untimely, but argues the Court should nonetheless reach the merits of his claims based on equitable tolling and actual innocence. Similarly, he argues his procedural default also should be excused for equitable reasons or based on his "actual innocence." *Doc. 12*.

## II.  Discussion

### A.    Frankenhauser's Claims are Time-Barred.

Generally, a state prisoner seeking to challenge his state court conviction in federal court must file a petition for habeas relief within one year after the state "judgment of conviction becomes final" by conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A).

On May 14, 2014, Frankenhauser entered his unconditional guilty plea in Washington County Circuit Court. He had thirty days from the filing of the Sentencing Order, May 16, 2014, to file a notice of appeal.[11] After he failed to do so, Frankenhauser's conviction and sentence became "final" on Monday, June 16, 2014.[12] Thus, from that date, he had one year to file his § 2254 habeas Petition. *See Gordon v. Hobbs*, 823 F.3d 1188, 1193 (8th Cir. 2016) (one-year limitations period

---

[11] In *Camacho v. Hobbs*, 774 F.3d 931, 934 (8th Cir. 2015), the Court acknowledged that, under Arkansas law, there is no general right to appeal an unconditional guilty plea. Nonetheless, the Court held, for purposes of triggering the habeas limitations period, a defendant who pleads guilty is entitled to the thirty days in which he could have, but did not, file a notice of appeal.

[12] Because the thirtieth day fell on Sunday, June 15, 2014, Frankenhauser's Judgment became final on June 16.

in § 2244(d)(1) began to run thirty days after entry of state-court judgment on guilty plea).

The one-year deadline for Frankenhauser to seek federal habeas relief expired on June 16, 2015. He then waited almost two years, until June 2, 2017, to initiate this action. Both Frankenhauser and Respondent agree that his habeas Petition is barred by the one-year statute of limitations *unless* the Court concludes that he is entitled to equitable tolling or the actual innocence exception.[13]

### B.    Equitable Tolling Will Not Save Frankenhauser's Untimely Habeas Petition.

Because § 2244(d) has been held to be a statute of limitations, not a jurisdictional bar, an untimely habeas Petition may be saved if a petitioner can show he is entitled to equitable tolling. However, to prevail, the petitioner has the heavy burden of demonstrating that: (1) he has been "pursuing his rights diligently," but (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S.Ct. 2549, 2560, 2562 (2010).

On the question of his "diligence," Frankenhauser makes no effort to explain his long delay in initiating this action.[14]  *See, e.g., Nelson v. Norris*, 618 F.3d 886,

---

[13]    Neither party argues that Frankenhauser is entitled to any statutory tolling. *See* 28 U.S.C. § 2244(d)(2).

[14]    After entering his guilty plea on May 14, 2014, Frankenhauser waited until November 20, 2014 to file his Rule 37 petition, which was also untimely.

Frankenhauser provides no explanation for why he then waited over two and one-half years to file his federal habeas Petition. Any assertion that he was trying to pursue post-conviction relief

893 (8th Cir. 2010) (no diligence where petitioner did not file his federal habeas petition until nine months after state supreme court denied rehearing in his post-conviction proceeding); *Earl v. Fabian*, 556 F.3d 717, 724 (8th Cir. 2009) (no equitable tolling where petitioner waited to file his federal petition until eight months after receiving notice that his judgments were final).

Frankenhauser also fails to raise any "extraordinary circumstances" that prevented him from initiating this action on a timely basis. He alludes to not being provided with a copy of the Sentencing Order filed two days after his guilty plea. However, as Respondent points out, Frankenhauser *knew* that he was sentenced to life in prison on May 14, 2014. The next day, he admits he signed the Sentencing Order, which was filed on May 16, 2014. *Doc. 8 at p. 11.*[15] While Frankenhauser may not have received a file-marked copy of the Sentencing Order, this in *no way* interfered with his obligation to file a timely Rule 37 petition in the trial court within

---

in state court during this time does *not* excuse him from diligently taking the necessary steps to file a timely federal habeas petition. See *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (refusing to apply equitable tolling during period that petitioner was "trying in good faith to exhaust state remedies," and observing that petitioner could have filed a "protective" habeas petition in federal court); *Gordon v. Arkansas*, 823 F.3d 1188, 1195 n.4 (8th Cir. 2016) (refusing to apply equitable tolling to period petitioner was attempting to exhaust state-court remedies); *Runyan v. Burt*, 521 F.3d at 942, 943-44 (8th Cir. 2008) (rejecting the applicability of equitable tolling where "properly verifying the Iowa [post-conviction relief] application and including the requisite filing fee were entirely within Runyan's control" and he "could have protected himself" during their pendency by filing a timely federal habeas petition and seeking "stay and abeyance").

[15]  Respondent assumes the Sentencing Order was filed on May 15, 2014, the same day it was signed. However, as Frankenhauser points out, and a review of the online docket from Washington County Circuit Court confirms, the Sentencing Order was filed on May 16, 2014.

ninety days of May 16, 2014. Thus, his alleged failure to receive a copy of the Sentencing Order does not constitute an "extraordinary circumstance" that prevented him from initiating this habeas action within one year from June 16, 2014.[16]

Frankenhauser also argues that, reading *Holland* together with *Martinez v. Ryan*, 566 U.S. 1 (2012), the Court should conclude that the absence of counsel to assist him in pursuing Rule 37 relief is an "extraordinary circumstance" that justifies equitable tolling. *Doc. 1, p. 33*; *Doc. 12, pp. 3-5*.

Under some circumstances, *Martinez* permits federal habeas review of a *procedurally defaulted claim* of ineffective assistance of trial counsel, where the default was caused by the absence of counsel or the presence of counsel who provided ineffective assistance during state post-conviction proceedings. *Martinez*, 566 U.S. at 13-14. While *Martinez* changed the law regarding federal habeas review of procedurally defaulted claims, no court has ever held that the lack of counsel to assist in pursuing post-conviction relief, *standing alone*, is an "extraordinary circumstance" warranting equitable tolling of the one-year statute of limitations. Furthermore, the Seventh, Tenth, and Eleventh Circuits have all explicitly rejected this argument. *Lombardo v. United States*, 860 F.3d 547, 555-61 (7th Cir. 2017)

---

[16] The Eighth Circuit has repeatedly held that a petitioner's *pro se* status, lack of legal knowledge or legal resources, or any confusion about the federal limitations period or state post-conviction law, does not justify equitable tolling. *See, e.g.*, *Johnson v. Hobbs*, 678 F.3d 607, 611 (8th Cir. 2012); *Shoemate v. Norris*, 390 F.3d 595, 597–98 (8th Cir. 2004).

("declin[ing] to recognize *Martinez's* framework as a means of establishing extraordinary circumstances for the purposes of equitable tolling"); *Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) (holding that "the reasoning of the *Martinez* rule does not apply to [the one-year] limitations period in § 2254 cases or any potential tolling of that period"); *Parkhurst v. Wilson*, 525 F. App'x 736, 738 (10th Cir. 2013) (habeas petitioner's "recent discovery of a relevant legal defense" based on *Martinez* does not provide a basis for equitable tolling). Because *Martinez* provides no basis for equitable tolling in this case, it cannot be used by Frankenhauser to excuse his initiation of this habeas action outside the one-year limitations period.

## C.   Actual Innocence Will Not Save Frankenhauser's Untimely Habeas Petition.

Frankenhauser also argues that his "actual innocence" entitles him to the "equitable exception" recognized in *McQuiggin v. Perkins*, 569 U.S. 383, 133 S. Ct. 1924 (2013). While the Court in *McQuiggin* explained that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to overcome a time-barred claim, it cautioned that:

> [T]enable actual-innocence gateway pleas are rare: A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

*Id.*, 569 U.S. at 386, 133 S.Ct. at 1928 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995). *See also House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing "demanding" nature of *Schlup* standard, which is seldom  met); *Jennings v. United States*, 696 F.3d 759, 764 (8th Cir. 2012) ("Actual innocence means factual innocence, not mere legal insufficiency.") (internal quotations and alterations omitted); *Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007) ("in non-capital cases the concept of actual innocence is easy to grasp, because it simply means the person didn't commit the crime.").

### (1)    Frankenhauser Has Failed To Present Any "New Evidence"

The actual innocence exception requires a habeas petitioner to come forward with "new reliable evidence" which was "not available at trial through the exercise of due diligence." *Schlup*, 513 U.S. at 324.  The law is clear that, "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup*, 513 U.S. at 316;  *Nooner v. Hobbs*, 689 F.3d 921, 937 (8th Cir. 2012) (when habeas petitioner fails to present new, reliable evidence of innocence, "it is unnecessary to conduct a further *Schlup* analysis").

Frankenhauser presents *no new evidence of innocence*.  He theorizes that, at the time he killed Ms. Stewart, he was unable to form the mental state necessary to

commit either capital or first degree murder due to his "involuntary intoxication" from prescribed medications and existing mental disease.[17]  *Doc. 1, pp. 10-16, 20-23, 32-33; Doc. 12, at p. 3.*  The only evidence he identifies to support this theory is a last minute Forensic Evaluation that his attorney, Mr. Aydelott, obtained from Dr. Bob Gale.  Dr. Gale examined Frankenhauser on April 29, 2014 and issued his written report on May 13, 2014, one day *before* Frankenhauser's guilty plea.  *Doc. 1, at pp. 37-41.*[18]  Thus, Dr. Gale's report was available to Frankenhauser and his counsel *before* he entered his guilty plea, which allowed them to carefully consider and weigh the content of that report in deciding whether Frankenhauser should plead guilty to first degree murder or proceed to trial on the capital murder charge.[19]

---

[17] Under Arkansas law, a person commits capital murder if, with the "premeditated and deliberated purpose of causing the death of another person, the person causes the death of any person." Ark. Code Ann. § 5-10-101(a)(4).

A person commits first degree murder "if, with a purpose of causing the death of another person, he causes the death of another person." *Kaufman v. State*, 2013 Ark. 126, 4 (citing Ark. Code Ann. § 5-10-102(a)(2) (Repl. 2006). "A person acts purposely with respect to his conduct or as a result of his conduct when it is his conscious object to engage in conduct of that nature or to cause the result. *Id*. (citing Ark. Code Ann. § 5-2-202(1) (Repl. 2006).

[18] In the report, Dr. Gale concluded that when Frankenhauser shot and killed Ms. Stewart: (1) he had mental disease and long-standing diffuse mental defect(s);  (2)  he "at least partially lacked the rational capacity for the culpable mental state involving premeditation, in that he was in the midst of a combination of an impaired mental state secondary to an adverse reaction to a combination of psychotropic medications, a threat of abandonment, and a longstanding impulse control disorder";  and (3)  he lacked "the capacity to conform his conduct to the requirements of law, secondary to his long-standing underlying mental disease and defect(s), and in particular, his altered mental state secondary to his medications and their adverse effects at that time." *Doc. 1*, Dr. Gale Report, at 38-39.

[19] In making this argument, Frankenhauser fails to mention that Dr. Gale's finding supporting "mental disease or defect" are in direct conflict with the findings of Dr. Peacock and Dr. Walz.

Faced with these *indisputable facts*, Frankenhauser argues that *Schlup's* new evidence requirement is satisfied by any "reliance evidence . . . that was *not presented at trial*." *Doc. 12, p. 8* (emphasis added).  Accepting such a strained and far-reaching application of *Schlup*  would allow habeas petitioners who entered guilty pleas to raise an actual innocence claim based on *any* evidence.  This would be utterly inconsistent with the letter and spirit of the actual innocence exception, which courts have uniformly construed to be a narrow exception that must satisfy a demanding evidentiary standard of proof which can only rarely be met.  Finally, in *Kidd v. Norman*, 651 F.3d 947, 950 (8th Cir. 2011), the Court explicitly rejected this very argument by a petitioner who claimed that the "new evidence" required to support an actual innocence claim includes "any evidence not presented at the original trial."  Instead, the Court held that a habeas petitioner can only prevail on a gateway actual innocence claim if he  "come[s] forward with new reliable evidence which was not available at trial through the exercise of due diligence." *Id*. at 53.

Here, Frankenhauser has failed to meet his burden of presenting new evidence of his "actual innocence" that was unavailable to him at the time he entered his guilty plea.[20]   Accordingly, Frankenhauser cannot rely on that exception to excuse his failure to initiate this action within the one year limitations period.

---

[20]  The fact that Frankenhauser's conviction was based on a guilty plea does not foreclose his actual innocence claim.  *See Weeks v. Bowersox*, 119 F.3d 1342, 1355 (8th Cir. 1997) (en banc); *Barrington v. Norris*, 49 F.3d 440, 441 (8th Cir. 1995).  However, as Judge Loken observed

(2)    **Dr. Gale's Report Does Not Establish Frankenhauser's Actual Innocence**

Aside from Dr. Gale's report *not* constituting "new evidence," it does not establish Frankenhauser's actual innocence. Dr. Gale's report is in direct conflict with the earlier reports by Drs. Peacock and Walz regarding their evaluations of Frankenhauser's mental capacity at the time of the offense.[21] *See* discussion, *supra*. If Frankenhauser had elected to go to trial and presented Dr. Gale's opinion to the jury, the prosecution would have countered it with the opposite opinions of Dr. Peacock and Dr. Walz. In addition, a defense of lack of mental capacity would have allowed the prosecution to introduce damaging evidence of Frankenhauser's prior arrests and convictions for domestic violence.[22]    The record suggests that Mr. Aydelott thoroughly investigated the issues surrounding Frankenhauser's mental capacity to commit capital murder, and properly concluded that Frankenhauser had

---

in *Weeks*, "there is an inherent paradox in the notion that someone who has stood in open court and declared, 'I am guilty,' may turn around years later and claim that he deserves to pass through the actual innocence gateway." *Weeks*, 119 F.3d at 1355 (Loken, J., concurring).

[21]  Dr. Peacock and Dr. Walz also considered Frankenhauser's use of Depakote, starting on July 20, 2012, approximately two weeks before he murdered Ms. Stewart. *Doc. 8-5 at p. 21*; *Doc. 8-4 at pp. 8-9*. Dr. Peacock specifically considered and rejected Frankenhauser's "claim that his recently begun Depakote medication regimen had caused him to experience a sense of unreality, racing thoughts, and amnesia at the time of the alleged offense." *Doc. 8-5 at p. 21*. Neither concluded this new medication deprived Frankenhauser of the ability to appreciate and understand his actions in killing Ms. Stewart.

[22]  *See*, *e.g.*, Dr. Peacock's Report, *Doc. 8-5, p. 8* ("Mr. Frankenhauser reported that he had been convicted on five separate occasions and incarcerated at least three prior times related to domestic violence.").

14

little, if any, chance of convincing a jury he lacked the mental capacity to be found guilty of that crime.

Finally, Dr. Gale agreed with Drs. Peacock and Walz that Frankenhauser understood the charges against him and had the capacity "to effectively assist counsel with his defense." *Doc. 1 at 38*. Thus, the record makes it clear that, when Frankenhauser stood before the trial court and admitted his guilt, he understood the nature of the proceeding and made a knowing and voluntary decision to plead guilty to first-degree murder. This further undercuts Frankenhauser's claim of actual innocence. *See McCall v. Benson*, 114 F.3d 754, 758 (8th Cir. 1997) (even if a prisoner attempted to show actual innocence, "in light of his guilty plea, such an attempt would be unpersuasive."); *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.") (omitting citations).

Based on the record in this case, it is not possible to reach the required conclusion that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Brownlow v. Grouse*, 66 F.3d 997, 999 (8th Cir. 1995) (quoting *Schlup*, 513 U.S. at 322). Frankenhauser has failed to demonstrate that "no reasonable juror" would have convicted him, after weighing Dr. Gale's

opinions against those of Drs. Peacock and Walz *and* the abundance of other evidence proving his guilt. *Schlup*, 513 U.S. at 327.

### III. Conclusion

Thus, the Court concludes that all of Frankenhauser's federal habeas claims are time-barred, and that he has failed to demonstrate he is entitled to equitable tolling or the actual innocence exception as a way to save those claims.

IT IS THEREFORE ORDERED THAT this 28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus (*Doc. 1*) is DENIED and this case is DISMISSED, WITH PREJUDICE.

IT IS FURTHER ORDERED THAT A Certificate of Appealability is DENIED. *See* 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

DATED this 31st day of January, 2019.

_____
UNITED STATES MAGISTRATE JUDGE